**Carl BECKER, Petitioner,**

v.

**STATE OF NEBRASKA, Respondent.**

**Civ. No. 1495L.**

United States District Court,
D. Nebraska.

April 6, 1970.

Nicholas J. Lamme, Fremont, Neb., for petitioner.

Ralph H. Gillan, Asst. Atty. Gen., State of Nebraska, Lincoln, Neb., for respondent.

## MEMORANDUM and ORDER

VAN PELT, District Judge.

Carl Becker is an inmate at the Nebraska Penal and Correction Complex serving a 5-year sentence imposed by the District Court of Dodge County, Nebraska, on September 27, 1968 for the crime of possession of a forged instrument. He seeks habeas corpus relief under 28 U.S.C.A. § 2241 alleging he was denied his right to a speedy trial as guaranteed by the 6th Amendment to the Constitution of the United States.

On September 30, 1968, petitioner filed with the sentencing court an application for a writ of habeas corpus. The court construed this as a petition seeking relief under the Nebraska Post Conviction Act and denied the motion. Petitioner sought to appeal this denial. On March 13, 1969 his appeal to the Nebraska Supreme Court was dismissed for failure to file briefs. There is some indication that a brief was actually tendered and that it was refused because it was not in acceptable form. Following its earlier decisions this court finds the exhaustion of state remedies sufficient to confer jurisdiction upon this court pursuant to 28 U.S.C.A. § 2254. See Meter v. State, Civil 1227L (D.Neb. 1969) unreported. Counsel was appointed for the petitioner. An evidentiary hearing was held. The case is now ready for decision.

Petitioner, in his brief, has set forth a chronology of events which has been most helpful to the court. We find these dates and events supported by the evidence presented at the evidentiary hearing. Exhibit numbers supporting certain of the statements have been added to this chronology.

## CHRONOLOGICAL SCHEDULE OF EVENTS

**1965**

September 28, Complaint for Possession of a Forged Instrument filed in Justice of the Peace Court [Exhibit 1]

Warrant issued on Complaint. [Exhibit 1]

December 20, Petitioner arrested in Sioux City, Iowa on Nebraska Warrant. [Exhibit B, filing #6]

Petitioner appeared in Municipal Court; hearing date set.

Petitioner confined to jail.

**1966**

January 21, Case dismissed, petitioner released. [Exhibit B, filing #6]

April 1, Petitioner sentenced to five years in Iowa State Penitentiary for False Impersonation.

April 27, Detainer from Nebraska placed against Petitioner. [Exhibit 3]

Petitioner advised that Detainer had been placed against him.

April 28, Petitioner signed Agreement on Detainers. [Exhibit 4]

June 14, Petitioner given another notice that Detainer was placed against him. [Exhibit 5]

Petitioner granted permission to write Sheriff Homer Brainard [Exhibit 5].

**1967**

| | |
|---|---|
| January 11, | Letter from Sheriff Homer Brainard sent to Mr. R. D. King acknowledging Petitioner's request for a speedy trial. [Exhibits 6 and 7] |
| August 1, | Original date set for petitioner's parole. [Exhibit 9] |
| August 7, | Petitioner wrote Sheriff Brainard advising of the parole. [Exhibits 8 and 9] |
| August 18, | Petitioner again wrote Sheriff advising of parole. |

**1967**

| | |
|---|---|
| September 1, | Petitioner released into custody of Dodge County Sheriff's Department. |
| September 8, | Arraignment, bond set, Ray C. Simmons appointed as Petitioner's counsel. [Exhibit 1] |
| September 25, | Petitioner posted $1,000.00 bail bond. [Exhibit 1] |
| October 8–9, | Petitioner in Iowa City, Iowa for eye examination. [Exhibit 2] |

**1968**

| | |
|---|---|
| June 23 | Petitioner arrested in Vancouver, Washington. [Exhibit 2] |
| August 13, | Petitioner picked up by Dodge County Sheriff's Department. [Exhibit 2] |
| August 19, | Date Superior Court was to have held fugitive warrant hearing. [Exhibit 2] |
| September 3, | Entered plea of "Not Guilty". [Exhibit 2] |
| | Ray C. Simmons moved to withdraw; Motion granted. [Exhibit 1] |
| September 19, | Trial of action at which Petitioner entered plea of "Guilty"; Petitioner took stand and gave testimony as to denial of speedy trial. [Exhibits 1 and 2] |
| September 26, | Petitioner sentenced to five years in Nebraska Penal and Correctional Complex. [Exhibit 1] |
| | Petition for Writ of Habeas Corpus filed alleging denial of constitutional right to a speedy trial. |
| September 30, | Petition filed September 26 denied. |
| October 10, | Petitioner filed Notice of Appeal and other pleadings. |

**1969**

| | |
|---|---|
| April 7, | Mandate of Nebraska Supreme Court filed dismissing appeal. |

———◆———

It is the contention of the respondent that the petitioner did not demand a speedy trial at any time. The court specifically finds such a request was made as early as May of 1966 and was reasserted in August of 1967 (Exhibits 4

and 5). No action was taken by the State of Nebraska to bring petitioner to trial until September 1, 1967 (Exhibit 1). For reasons which will appear herein, the Court concludes that the period of time to be considered in determining whether the petitioner was denied a speedy trial is that period from May, 1966 to September, 1967, which is a span of sixteen months.

■ The United States Supreme Court has recently decided two cases which bear directly upon the issue herein presented. In Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967), the Court held that the Sixth Amendment right to a speedy trial is enforcible against the states by virtue of the Fourteenth Amendment as "one of the most basic rights preserved by our Constitution." *Id.* at 226, 87 S.Ct. at 995.

Last term, the Court further clarified this Sixth Amendment right in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607 (1969). In *Smith*, the Court ruled that the fact that an individual may be serving a sentence in another jurisdiction does not relieve the state from the obligation of providing him with a speedy trial on pending charges upon his request or demand.

■ The question arises in this case as to the retroactivity of *Klopfer* and *Smith*. Although it appears that the Supreme Court has not yet considered this question, it is believed that the Supreme Court's decision in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966) wherein it was held that the decision rendered in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966) was to receive only prospective application gives adequate support to the view that the *Smith* and *Klopfer* decisions are to be applied retrospectively. *Klopfer* announces the right to a speedy trial as a basic and fundamental right. It is such rights, under the rationale of *Johnson, supra,* which are entitled to retrospective application. See Needel v. Scafati, 412 F.2d 761 (1st Cir. 1969).

The decision in *Smith* is particularly relevant to the instant case. Since this is a case of first impression in this district, a discussion of the *Smith* rationale is necessary. Of critical importance is an examination of the remedies available in this court if petitioner's rights are found to have been abrogated.

The facts in *Smith* may be summarized as follows: Petitioner was indicted in Texas in 1960 while a prisoner in the federal penitentiary at Leavenworth, Kansas. A detainer was placed against him. He made several attempts to gain a speedy trial on the Texas charge culminating in a mandamus action in the Texas Supreme Court. That court, relying upon the theory that two separate sovereigns were involved, refused to grant the requested writ of mandamus. The United States Supreme Court reversed and remanded "for further proceedings not inconsistent with this opinion." *Smith,* 393 U.S. at 383, 89 S.Ct. at 580.

■ The Court in *Smith* notes the reasons underlying the necessity for guaranteeing a speedy trial to those accused of crimes. Relying upon United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), it observed that this right "protect[s] at least three basic demands of criminal justice in the Anglo-American legal system: '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' " *Smith,* 393 U.S. at 378, 89 S.Ct. at 577.

The Court points out that these demands are aggravated and compounded in the case of an accused who is imprisoned in another jurisdiction.

"First, the possibility that the defendant already in prison might receive a

sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.

\* \* \* \* \* \*

"Finally, it is self-evident that 'the possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. *Smith*, 393 U.S. at 378–379, 89 S.Ct. at 577–578.

Thus, the Supreme Court remanded the case for proceedings "not inconsistent with this opinion." The majority opinion does not discuss the proper remedy to be applied in such a case. Mr. Justice Black, concurring, observed: "\* \* \* he would make it absolutely clear to the Supreme Court of Texas that so far as the federal constitutional question is concerned its judgment is set aside only for the purpose of giving the petitioner a trial, and that if a trial is given the case should not be dismissed." *Smith*, 393 U.S. at 383, 89 S.Ct. at 580. Mr. Justice Harlan and Mr. Justice White, concurring separately, also voice concern as to the proper remedy in such a case; Mr. Justice White noting: "I join the opinion of the Court, understanding its remand of the cause 'for further proceedings not inconsistent with this opinion' to leave open the ultimate question whether Texas must dismiss the criminal proceedings against the petitioner." *Smith*, at 384, 89 S.Ct. at 580.

While the *Smith* decision is relevant here, we do have in the instant case substantial factual differences. In *Smith*, the petitioner was still in federal custody, no trial having been given on the Texas charge. Here, petitioner has been given a trial and is attacking his conviction in post conviction proceedings.

In *Smith*, the period of delay confronting the Supreme Court was nine years. Here we are concerned with a period of sixteen months. As noted earlier, petitioner made his original demand for trial in May of 1966. Final disposition of the matter was not effected until September 28, 1968. However, the petitioner was received from the Iowa authorities on September 1, 1967. At that time or shortly thereafter, bond was set and petitioner was released on September 25th. He did not appear at his arraignment set for February 9, 1968 and was not taken into custody again until June 23, 1968, at which time he was returned to Nebraska to face the charge pending against him. We feel it would not be proper to take into consideration this period from September 25th to June 23d, when the petitioner was free on bond and avoided appearing in the Nebraska courts to answer the charges pending against him. It would appear that his desire for a speedy disposition of the charges against him somewhat faded once he found himself no longer in custody. Therefore, in determining this matter, the court will consider only the period of time from May of 1966 to September of 1967.

Thus, we are confronted here with a sixteen months unexplained delay in the processing of the charges pending against the petitioner in the District Court of Dodge County, Nebraska, which we must view in the light of the Supreme Court's statement in *Smith* that:

"Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." *Id.* at 383, 89 S.Ct. at 579.

The desirable relief, as seen by the petitioner, would be the immediate issuance of a writ of habeas corpus directing his release and barring any further prosecution of the charge.

The court's authority under the previously discussed decision to fashion appropriate relief is much more restricted than the petitioner would urge. Lawrence v. Blackwell, 298 F.Supp. 708 (N.D. Ga.1969).

■■ This court holds that when federal habeas corpus relief is requested, it may act only under two sets of circumstances. First, where an individual is imprisoned and a detainer is placed against him from another jurisdiction, it is a proper exercise of power upon the showing of the proper prerequisites, to order the individual tried upon the charges which are the basis for the detainer or that the detainer be removed. Secondly, if, after conviction, an individual applies to this court after exhausting his state remedies, and alleges that his defense was prejudiced by the unreasonable delay on the part of state officials in bringing him to trial, it is within the court's authority upon proof of such prejudice, to order a new trial. The court does not subscribe to the petitioner's theory that it may, without a showing of prejudice, summarily bar further prosecution on the charge.

■■ Considering the question of the detainer, such a warrant of detainer without doubt will necessitate certain restrictions upon the individual already incarcerated. Lawrence v. Blackwell, supra. Such an individual with a detainer placed against him is "in custody" of the detainer in the traditional habeas corpus sense. See Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), where the Supreme Court held that restrictions placed upon an individual on parole qualified him as technically "in custody", thus meeting federal habeas corpus requirements. See also, Word v. North Carolina, 406 F.2d 352 (4th Cir.

1969) wherein it was held that a detainer was "in custody." Therefore, if the custody is or becomes in violation of the Constitution of the United States by virtue of the fact that an unreasonable amount of time has passed without the petitioner being brought to trial, a district court could exercise its habeas corpus jurisdiction directing the individual to be tried or the detainer released. Of course, such an individual must have made a demand for disposition of the charges and upon the denial of such demand must have exhausted his state court remedies prior to bringing suit. See May v. Georgia, 409 F.2d 203 (5th Cir. 1968); Lawrence v. Blackwell, supra 298 F.Supp. at 713 et seq.

We now consider the instance of an individual, who has exhausted state remedies, seeking relief after conviction. The problem necessarily is to be approached on a case by case basis. As the Supreme Court noted in United States v. Ewell, supra, concerning situations involving Sixth Amendment rights:

"[T]his Court has consistently been of the view that 'The right of a speedy trial is necessarily relative.' It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." Id. 383 U.S. at 120, 86 S.Ct. at 776.

Thus, as noted above, if this were a case where the petitioner had established that his defense was prejudiced by an unreasonable delay on the part of the State, it would be a proper situation in which to grant the writ and order a new trial. A case could be envisioned where it might become necessary to bar further prosecution, i. e., the death of a material witness. In such an event the granting of a new trial would not relieve the petitioner of the injustice which existed.

■ Returning to the instant case, the record as a whole supports the conclusion that no prejudice has resulted to the petitioner in his defense by virtue

of the sixteen months delay in his prosecution by Nebraska authorities, and the court so finds.

It can be argued that a sixteen months delay makes out a prima facie case of prejudice absent a reasonable explanation on the part of state officials. This concept has been expressly rejected in United States v. Ewell, *supra*, which involved a nineteen months delay. See also, Hodges v. United States, 408 F.2d 543 (8th Cir. 1969) (18 months delay).

 Petitioner testified that the detainer placed upon him interfered to a certain extent with the treatment of an eye disease while in the Iowa penitentiary. A habeas corpus action is not the proper place to seek redress for such a prejudice. And certainly, as the Court noted in *Smith*, petitioner lost at least a possibility that the Nebraska sentence would have been made to run concurrently with the Iowa sentence. Under Nebraska law, it is within the discretion of the sentencing judge as to whether the sentences will run concurrent with or consecutive to a prior sentence. Culpen v. Hann, 158 Neb. 390, 63 N.W.2d 157 (1954). To now issue a writ of habeas corpus and bar further prosecution based upon what the trial judge might have done had petitioner been brought to trial in May of 1966 is speculative. By itself sufficient prejudice is not shown to the petitioner to warrant the relief he requests.

 Although there is authority to the contrary, see Luckman v. Burke, 299 F.Supp. 488 (E.D.Wis.1969), the weight of authority and reason support the position herein taken. The federal courts appear to uniformly hold that the State retains its right to try an individual unless irrevocable prejudice is shown.

For these reasons,

It is ordered that the application for a writ of habeas corpus be and the same hereby is overruled and denied and the complaint dismissed.